[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 15, 2004
THOMAS  K. KAHN
CLERK

No. 03-12804

D. C. Docket No. 97-00022 CR-B-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES DANNY HARRIS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Alabama

**(July 15, 2004)**

Before DUBINA and CARNES, Circuit Judges, and MILLS*, District Judge.

DUBINA, Circuit Judge:

_____

*Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Appellant Charles Danny Harris appeals his conviction and sentence for fraudulent use of a Social Security number with intent to deceive, in violation of 42 U.S.C. § 408(a)(7)(B). Harris contends that his prosecution violated the terms of a pretrial diversion agreement, as well as his rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment, and, in any event, that the government offered insufficient evidence to sustain his conviction. For the reasons that follow, we affirm.

## I. BACKGROUND

On January 5, 1997, Homewood, Alabama Police Sergeant Mara Sirles stopped a vehicle driven by Harris for emitting excessive and annoying smoke. When Sirles asked for Harris's driver's license, Harris instead produced three alternate forms of identification: an international driving permit, a government rate card, and an identification card, all of which were typewritten and appeared to be false. All of the forms of identification contained Harris's photograph, and two of them listed a Social Security number that was not assigned to Harris. The government rate card contained an obvious typographical error.

Wade Green, another Homewood police officer, arrived at the scene to assist Sirles. Green asked Harris if the information on the identification cards was correct, and Harris responded affirmatively. After Harris was arrested at the

2

scene, on unrelated charges, Green inquired further as to whom the Social Security number on the identification cards belonged. Harris responded that "[h]e would rather not say. The old boy it belongs to in Arkansas wouldn't appreciate it or wouldn't appreciate knowing that I was using it." [R. Vol. 3 at 89, 147; *see also* R. Vol. 1, Tab 15, Ex.] Ultimately, Green discovered that the Social Security number on the cards belonged to then-President William Jefferson Clinton.

Harris later admitted that he had obtained blank identification cards from a Louisiana mail-order company after his Tennessee driver's license had been revoked for failure to pay numerous traffic citations. Harris laminated the cards after typing in his personal information as indicated, along with President Clinton's Social Security number.

On January 15, 1997, a grand jury returned a one count indictment charging Harris with knowingly, willfully, and falsely representing to law enforcement that the Social Security number printed on the identification cards was the Social Security number assigned to him while knowing that it was not, in violation of 42 U.S.C. § 408(a)(7)(B). At his arraignment on January 23, 1997, Harris pled not guilty.

On January 28, 1997, Harris filed two motions to suppress evidence.[1]  On February 27, 1997, while Harris's pretrial motions were still pending, the government and Harris entered into an "Agreement for Pretrial Diversion" (the "Agreement"), wherein the government agreed to defer prosecution for 12 months, provided that Harris fulfilled all of the "Conditions of Pretrial Diversion" enumerated in the Agreement.  [R. Vol. 1, Tab 20, Ex.]  The first of these conditions provided:  "You shall not violate any law (federal, state and local).  You shall immediately contact your pretrial diversion supervisor if arrested and/or questioned by any law enforcement officer."

The Agreement further stated, in two separate provisions:

> Should you violate the conditions of this supervision, the United States Attorney may revoke or modify any conditions of this pretrial diversion program or change the period of supervision which shall in no case exceed 12 months.  . . .  The United States Attorney may at any time within the period of your supervision initiate prosecution for these offenses should you violate the conditions of this supervision and will furnish you with notice specifying the conditions of your program which you have violated.

> *   *   *

> If, upon completion of your period of supervision, a pretrial diversion report is received to the effect that you have complied with all the rules, regulations and conditions above mentioned, no

---

[1] On February 3, 1997, a Magistrate Judge ordered the motions to be heard in conjunction with trial.

prosecution for the offenses . . . will be instituted in this District, and any indictment or information will be discharged.

In the Agreement, Harris also specifically agreed that

any delay from the date of this Agreement to the date of the initiation of prosecution, as provided for in the terms as expressed herein, shall be deemed to be a necessary delay at my request and I waive any defense to such prosecution on the ground that such delay operated to deny my rights under 48(b) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the Constitution of the United States to a speedy trial. . . .

In addition, the district court granted the government's motion to treat the diversion period as excludable time for purposes of the Speedy Trial Act.

On February 10, 1998, the government sent Harris a letter informing him that it had learned that Harris was arrested in September 1997 and charged with multiple drug, alcohol, and traffic offenses. The government gave Harris 14 days to respond, and informed him that if he failed to timely respond, the government would request that his case be placed back on the trial calendar.

Harris failed to timely respond to the letter, and the government moved to proceed to trial on March 20, 1998, approximately 23 days after the 12-month period of supervision ended. On September 21, 1998, the district court granted the government's motion and set December 7, 1998, as the trial date.

On December 7, 1998, Harris filed a motion to dismiss the indictment which the district court orally denied the following day after a hearing on the matter. Then, following a hearing on December 9, 1998, the district court denied Harris's still-pending suppression motions, which had been filed on January 28, 1997, and deferred until trial. On December 14, 1998, the district court conducted voir dire and commenced trial. A jury found Harris guilty on December 15, 1998.

On December 22, 1998, Harris filed a motion for judgment of acquittal. This motion remained pending for more than three years. In the meantime, the district court sentenced Harris to seven months imprisonment, followed by three years of supervised release. Harris filed a timely notice of appeal, which the district court held pending entry of judgment. During this period, Harris remained free on bond.

On April 11, 2002, the district court denied Harris's motion for judgment of acquittal. In a footnote in its order, the district court commented: "To say that this case fell through the cracks is a gross understatement. The court has no excuse and makes none for its failure to promptly decide this matter." [R. Vol. 1, Tab 43 at 1 n.1.] The district court modified Harris's sentence, in its own words, "to slightly ameliorate the harm done to defendant by the court's inexcusable delay." [R. Vol. 1, Tab 43 at 9.] With the concurrence of the government, the district

court reduced Harris's sentence to five months probation with a special condition that Harris serve four months home detention.

Harris has completed the conditions of his revised sentence, but nonetheless challenges his felony conviction.

## II.  ISSUES

1.  Whether the government's prosecution of Harris violated the terms of the pretrial diversion agreement.

2.  Whether the delay in Harris's prosecution violated his Sixth Amendment right to a speedy trial and his rights under the Speedy Trial Act.

3.  Whether the government's evidence was sufficient to sustain a conviction under 42 U.S.C. § 408(a)(7)(B).

## III.  STANDARDS OF REVIEW

Whether the government has violated the terms of a pretrial diversion agreement is a question of law that this court reviews *de novo*.  *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (holding that the court would review *de novo* the issue of whether the government's prosecution of the defendant-appellant constituted a breach of his plea agreement); *United States v.*

*Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979)[2] (noting that a pretrial diversion agreement is "analogous to a plea bargain agreement").

This court reviews *de novo* the district court's denial of a criminal defendant's motion to dismiss based upon his Sixth Amendment right to a speedy trial, *United States v. Schlei*, 122 F.3d 944, 986 (11th Cir. 1997), or the Speedy Trial Act, *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002). However, this court reviews for clear error the district court's factual determinations as to what constitutes excludable time under the Speedy Trial Act. *Id.*

This court also reviews *de novo* the sufficiency of evidence supporting a conviction, but must view all evidence in the light most favorable to the government and must make all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Kent*, 175 F.3d 870, 873 (11th Cir. 1999).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207-09 (11th Cir. 1981) (en banc), this court adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.

## IV. ANALYSIS

A.    <u>The government did not breach Harris's pretrial diversion agreement</u>.

A pretrial diversion agreement is analogous to a plea bargain agreement. *see Warren*, 594 F.2d at 1049; *accord Aschan v. Auger*, 861 F.2d 520, 522 (8th Cir. 1988); *United States v. Hicks*, 693 F.2d 32, 33 (5th Cir. 1982); *United States v. Garcia*, 519 F.2d 1343, 1345 n.2 (9th Cir. 1975). Accordingly, this court interprets a pretrial diversion agreement applying the same standards we would use to interpret a plea agreement.

This court interprets a plea agreement "in a manner that is sometimes likened to contractual interpretation." *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990). This court will not adopt a "hyper-technical reading of the written agreement" or "a rigidly literal approach in the construction of language." *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir. 1986), *quoted in Jefferies*, 908 F.2d at 1523. Instead, the written agreement will be "viewed against the background of negotiations and should not be interpreted to directly contradict an oral understanding." *Jefferies*, 908 F.2d at 1523 (internal quotations and alterations omitted). In addition, all ambiguities in the agreement must be construed against the government. *Id.*

To support his argument that the Agreement barred the government from initiating this prosecution, Harris relies exclusively on the language in the first provision, which authorizes the government to prosecute Harris during the diversion period in the event that he "violate[s] the conditions of this supervision." Harris fails entirely, however, to address the second provision, which does not contain any time limitation, and which explicitly envisions that the government retains its right to prosecute Harris if it does not receive a favorable "pretrial diversion report" from his program supervisor "upon completion of [the] period of supervision." Accepting Harris's argument would render meaningless the language of the second provision because the government could not possibly receive such a favorable report of compliance until *after* the 12-month period had concluded.

Considering both provisions of the Agreement together, the district court therefore rejected Harris's argument, supporting its analysis and conclusion with *United States v. Gogarty*, 533 F.2d 93 (2d Cir. 1976). In *Gogarty*, the Second Circuit held that the government did not breach a similar pretrial diversion agreement by prosecuting a defendant who failed to comply with its conditions, even though the government did not initiate prosecution until after the 12-month diversion period had expired. *Id.* at 94-95. Similar to the Agreement at issue in

10

this case, the agreement in *Gogarty* contained two separate provisions: one that authorized the government to initiate prosecution within the diversion period if the defendant failed to fulfill his obligations, and another that expressly conditioned the government's promise not to prosecute on the government's receipt of a favorable report from a program supervisor. *See id.* at 95.

Relying on *Gogarty*, the district court concluded that these provisions were not ambiguous and did not preclude the government from initiating prosecution after the 12-month deferral period had expired. The district court stated:

> The first [provision] merely puts the defendant on notice that if at any time during the period of supervision he violates the conditions of the agreement, the government may initiate prosecution after giving notice of the violation. The next [provision] further expands the ability of the government to prosecute if it does not receive notice of compliance with the terms of the agreement.

[R. Vol. 1, Tab 43 at 3.]

We agree with the district court and conclude that the government could have properly prosecuted Harris within the 12-month period, and it properly "prosecut[ed] him after the 12-month period when no favorable report [was] received."[3] *See Gogarty*, 533 F.2d at 95 (holding that, because "no such

---

[3] Furthermore, as the Second Circuit noted in *Gogarty*:

Appellant's real complaint is that he has a contractual right not to be prosecuted, . . . but this obviously implies that he has performed his part of the bargain. The appellant failed to live up to his obligation and this agreement . . . contained no time limit on the government's right

11

[favorable report] was ever written . . ., [the government] was . . . justified in prosecuting [defendant] after the 12-month period" expired); *cf. Garcia*, 519 F.2d at 1344-45 (holding that the government violated the terms of a pretrial diversion agreement when the agreement contained no language from which to infer that the government could initiate prosecution beyond the period of supervision, and the government indicted the defendant after the expiration of the express 150-day limitation period authorized by agreement).

Therefore, we hold that the government did not breach Harris's pretrial diversion agreement based on the grounds identified in the district court's well-reasoned opinion, including its reliance upon *Gogarty*. Accordingly, the only limitations on the government's ability to prosecute pursuant to the Agreement are the Speedy Trial Act and the Sixth Amendment.

B.    <u>Harris's rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment were not violated</u>.

1.    *Speedy Trial Act*

The Speedy Trial Act provides that:

---

to [ ]prosecute the defendant in the event of noncompliance. One who fails to carry out his part of the bargain cannot invoke the agreement against the government.

533 F.2d at 95 (internal citations and footnote omitted).

12

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).[4]  However, the Act excludes from the computation of the 70 days "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(F).[5]

---

[4] Because the requirements of the Speedy Trial Act cease once trial begins, the delay in deciding Harris's post-conviction motion for acquittal is not part of the Speedy Trial Act analysis. *See, e.g., United States v. Garcia*, 778 F.2d 1558, 1562 (11th Cir. 1986) ("For speedy trial purposes, the clock stops when the trial begins.").

[5] The Act also excludes from the computation "[a]ny period of delay during which prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, with the approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct." 18 U.S.C. § 3161(h)(2). Therefore, Harris argues that the exclusion pursuant to § 3161(h)(2), which is based on his pretrial diversion agreement, superseded the otherwise applicable § 3161(h)(1)(F) exclusion, based on his pretrial motions, because multiple sections of the Speedy Trial Act cannot apply in conjunction with and simultaneously to other sections. Accordingly, the argument goes, virtually all of the period between February 26, 1998, when the diversion agreement lapsed, and September 21, 1998, when the district court granted the government's motion to proceed with the prosecution, is not excludable from the Speedy Trial Act calculation. In the alternative, Harris argues, based on the same premise, that the five months between the time the government filed its motion for trial and the time the district court decided that motion also is not excludable time, pursuant to § 3161(h)(1)(J), which excludes from the computation "[a]ny period of . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *See United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991) ("[30-day] limitation arises when a motion which does not require a hearing is before the court."). No support exists, however, in the case law or the Speedy Trial Act for Harris's contention that multiple sections of the Speedy Trial Act cannot apply simultaneously. *See, e.g., United States v. Elkins*, 795 F.2d 919 (11th

Harris was arraigned on January 23, 1997, and filed pretrial suppression motions on January 28, 1997. The district court correctly found that the five-day period from January 24, 1997, to January 28, 1997, is not excludable. *See United States v. Elkins*, 795 F.2d 919, 922 (11th Cir. 1986) (noting that the day of the arraignment is excluded from the Speedy Trial Act calculation). The district court also correctly found that Harris tolled the running of the Speedy Trial Act limitations period on January 28, 1997, by filing pretrial suppression motions, which require a hearing. *See United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991) ("Motions necessitating hearings, such as suppression hearings . . . are governed by section 3161(h)(1)(F)."); *see also Henderson v. United States*, 476 U.S. 321, 326-30, 106 S. Ct. 1871, 1875-76, 90 L. Ed. 2d 299 (1986); *United States v. Beard*, 41 F.3d 1486, 1488 (11th Cir. 1995); *United States v. Garcia*, 778 F.2d 1558, 1562 (11th Cir. 1986). According to the district court, "[s]ince the Magistrate Judge at the pretrial conference deferred the motions to the district court to be heard at the time of trial, filing the motions tolled the speedy trial time until the district court conducted the hearing." [R. Vol. 1, Tab 43 at 5.] Therefore,

---

Cir. 1986) (applying multiple sections of the Speedy Trial Act to various periods of time). Furthermore, Harris's position is indirectly inconsistent with this court's precedent providing that a magistrate's deferral of a pretrial motion preserves its character as a pretrial motion, pending before the district court and subject to § 3161(h)(1)(F), until resolved by the court. *See, e.g.*, *Garcia*, 778 F.2d at 1562. Therefore, we summarily reject these arguments because Harris's pretrial suppression motions were pending from January 28, 1997, until December 8, 1998.

14

the period from January 28, 1997, when the suppression motions were filed, until December 8, 1998, when the hearing on such motions was held, is excluded from the Speedy Trial Act calculation.

Harris suggests that this court should hold that excluding this entire period would be unreasonable because the "or other prompt disposition" language in § 3161(h)(1)(F) evinces "a legislative intent to exclude . . . no more time than necessary [for resolution of a motion]." However, this court has held that "§ 3161(h)(1)(F) excludes *all* time between the filing of the motion and the conclusion of the hearing at which it is addressed." *United States v. Dunn*, 345 F.3d 1285, 1292 (11th Cir. 2003) (emphasis added), *cert. denied*, ___ S. Ct. __ (June 14, 2004); *see also Phillips*, 936 F.2d at 1254 ("[T]he entire time from the filing of the motion to the conclusion of the hearing is excludable, even when the hearing is deferred until trial."). "This entire period is excluded from the speedy trial clock and is not subject to review regarding its reasonableness." *Dunn*, 345 F.3d at 1292. The Supreme Court has similarly held that "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson*, 476 U.S. at 330, 116 S. Ct. at 1877.

15

This court must follow *Dunn* and *Henderson* and hold that the entire period between Harris's filing of his pretrial motions on January 28, 1997, and the district court's hearing on December 8, 1998, was excluded from the Speedy Trial Act calculation, without regard to its reasonableness. Accordingly, less than 70 days elapsed under the Act from Harris's indictment until his trial. Therefore, we conclude that the district court properly rejected Harris's Speedy Trial Act claim.

## 2. *Sixth Amendment*

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.[6] In order to determine whether a defendant has been deprived of his right to a speedy trial, this court must consider (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay (the "*Barker* factors"). *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992) (citing *Barker v. Wingo*, 407 U.S. 514,

---

[6] Because Harris's motion for acquittal was made post conviction (as it must be), it is not part of Harris's Sixth Amendment claim. *See, e.g., Dunn*, 345 F.3d at 1296 ("Specifically, the delay with which we are concerned is that between the date of the indictment and the trial date."). Moreover, even if this court were to consider such delay, Harris has shown no prejudice resulting from the delay because, among other things, he was free on bond during the relevant time period.

16

92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). "The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). A delay of more than 18 months – as is the case here – is "presumptively prejudicial" to the defendant under the first factor. *Dunn*, 345 F.3d at 1296.

Nonetheless, the Supreme Court has recognized that a defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with "reasonable diligence," and the defendant fails to show that the delay resulted in "specific prejudice to his defense." *Doggett*, 505 U.S. at 656, 112 S. Ct. at 2693. We conclude that Harris must demonstrate actual prejudice to his defense because the record demonstrates that the government pursued his prosecution with reasonable diligence. As the district court commented in its order, the delay in Harris's prosecution, aside from the diversion period, "was based on the scheduling demands of the court's calendar . . . and had nothing to do with either the government or the defendant." [R. Vol. 1, Tab 43 at 8-9.]

Furthermore, in this circuit, the defendant must demonstrate actual prejudice unless each of the first three factors "weigh heavily against the government."

17

*Dunn*, 345 F.3d at 1296. In this case, the first three *Barker* factors do not weigh heavily against the government. Even if the length of the delay was "presumptively prejudicial," the vast majority of the delay was not attributable to the government, and Harris did not assert his right to a speedy trial until December 7, 1998, the date that his trial was scheduled to begin.

Though required to show actual prejudice, Harris did not even argue actual prejudice in the district court, nor does he raise the issue on appeal. *See, e.g.*, *Wilkes v. United States*, 289 F.3d 684, 689 n.9 (11th Cir. 2002) (deeming as waived an argument not raised on appeal); *United States v. Anderton*, 136 F.3d 747, 751 n.3 (11th Cir. 1998) (noting that defendant's Sixth Amendment argument not raised before the trial court was waived on appeal). Moreover, even if Harris had not waived the issue, the record does not indicate that Harris suffered actual prejudice due to the delay.[7] Accordingly, because no support exists for Harris's position that his Sixth Amendment right to a speedy trial has been violated, there is no Sixth Amendment violation.

---

[7] A defendant who must prove actual prejudice to establish a speedy trial claim can do so by showing (1) oppressive pretrial incarceration; (2) anxiety and concern resulting from the delay; or (3) the possibility that his defense will be impaired. *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996). Harris was not incarcerated while awaiting trial and has offered nothing to suggest either that his defense was impaired during the delay or that he suffered some especial anxiety as a result of the delay.

C.    The government offered sufficient evidence to sustain Harris's conviction.

In order to establish a violation of 42 U.S.C. § 408(a)(7)(B), the government

must prove that the defendant, "with intent to deceive, falsely represent[ed] a

number to be [his Social Security number], when in fact such number [was] not

[his Social Security number]."  42 U.S.C. § 408(a)(7)(B).  Thus, the elements of

the offense are (1) false representation of a Social Security number, (2) with intent

to deceive, (3) for any purpose.  *See United States v. Means*, 133 F.3d 444, 447

(6th Cir. 1998); *United States v. McKnight*, 17 F.3d 1139, 1143 (8th Cir. 1994);

*United States v. Doe*, 878 F.2d 1546, 1553 (1st Cir. 1989); *United States v.*

*Darrell*, 828 F.2d 644, 647 (10th Cir. 1987).[8]

At trial, Harris admitted that, when asked for identification by the law

enforcement officers, he provided the officers with three false identification

documents, two of which bore his name, photograph, and a Social Security

number that did not belong to him.  Harris and Officer Green both testified that

---

[8] A few courts have concluded that the third element of a § 408(a)(7)(B) offense requires the government to prove that the defendant committed the charged conduct for the purpose of obtaining something of value.  *See, e.g.*, *United States v. Sparks*, 67 F.3d 1145, 1152 (4th Cir. 1995); *see also United States v. Youla*, No. 99-5151, 2002 WL 29704, at *3 (3d Cir. Jan. 11, 2002) (concluding that charged conduct must be committed "for the purpose of obtaining some benefit to which the defendant is not entitled").  This requirement has no basis in the text of the statute, however, which describes the *mens rea* element as merely "with the intent to deceive."  42 U.S.C. § 408(a)(7)(B). Therefore, this court concludes, as the First, Sixth, Eighth, and Tenth Circuits have, that the charged conduct may be committed "for any purpose."  *Means*, 133 F.3d at 447; *McKnight*, 17 F.3d at 1143; *Doe*, 878 F.2d at 1553; *Darrell*, 828 F.2d at 647.

19

Harris responded affirmatively when asked if the information on the cards was accurate. This evidence alone was sufficient to establish that Harris fraudulently used someone else's Social Security number with the purpose and intent to deceive law enforcement. Accordingly, we conclude from the record that the evidence presented at trial was more than sufficient to support Harris's conviction.

## V. CONCLUSION

Under settled precedent, we affirm Harris's Speedy Trial Act, Sixth Amendment, and sufficiency of the evidence challenges to his conviction. First, Harris's Speedy Trial Act claim fails because the entire period between January 28, 1997, when he filed his pre-trial motions, and December 8, 1998, when the hearing on such motions was held, is excluded from the speedy trial calculation under 18 U.S.C. § 3161(h)(1)(F). Second, Harris's Sixth Amendment speedy trial claim fails because he has not established a necessary factor: that he suffered actual prejudice as a result of the delay in his prosecution. Third, Harris's sufficiency of the evidence claim fails because the jury heard evidence establishing that Harris represented to law enforcement officers that documents bearing his name and someone else's Social Security number were accurate.

In addition, relying on *Gogarty*, we conclude, as did the district court, that the government did not breach Harris's pretrial diversion agreement. Accordingly, we affirm Harris's conviction and sentence.

AFFIRMED.