[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 3, 2005
THOMAS K. KAHN
CLERK

No. 04-15649
Non-Argument Calendar

D.C. Docket No. 03-62288-CV-JIC

FREDERICK S. KOGER,

Plaintiff-Appellant,

versus

STATE OF FLORIDA, Christopher Keith,
in his official capacity as hearing officer in the
Circuit Court in and for Broward County,
Florida North Satellite Courthouse,
MIETTE K. BURNSTEIN, in her official
capacity as Chief Judge, et al.,

Defendants-Appellees.

Appeals from the United States District Court for the
Southern District of Florida

**(May 3, 2005)**

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Frederick S. Koger appeals pro se the district court's dismissal for failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6), of Koger's civil rights action, filed pursuant to 42 U.S.C. § 1983, against Jeb Bush, as Governor of the State of Florida ("Governor"); Christopher Keith, as a hearing officer in the Circuit/County Court in Broward County; and Jane/John Doe, as "respondeat superrior for Broward County's Traffic Division."[1] Koger argues on appeal that this dismissal was erroneous. For the reasons set forth more fully below, we affirm the court's dismissal of Koger's complaint.

Koger filed a pro se amended § 1983 complaint, asserting that the Governor, Keith, and Jane/John Doe denied him his civil rights, pursuant to the First, Fifth, Eighth, Ninth, and Fourteenth Amendments, by maliciously prosecuting him, and by convicting him of a traffic infraction after failing to bring this infraction to trial

---

[1] To the extent the defendants are arguing that Koger's notice of appeal ("NOA") was untimely, an NOA generally must be filed within 30 days after the judgment or order being appealed is entered. See Fed.R.App.P. 4(a)(1)(A). However, this 30-day appeal period does not begin to run until a final judgment is entered on a separate document, pursuant to Fed.R.Civ.P. 58 and 79(a). See Fed.R.App.P. 4(a)(7) ( defining entry of a judgment or order as when it is entered in compliance with Rule 58 and Rule 79(a) of the Federal Rules of Civil Procedure). Because the district court did not enter a final judgment on a separate document in this case, this Court has appellate jurisdiction, whether or not Koger filed his NOA within 30 days of the entry of the court's order dismissing his complaint. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1278 (11th Cir. 2001) (concluding that this Court had appellate jurisdiction because the district court failed to enter a final judgment on a separate document).

2

within 180 days of the issuance of the citation. Koger contended that his claim of malicious prosecution was based on the defendants (1) committing fraud and abuse of process, (2) failing to notify him of a decision, (3) falsifying documents, and (4) failing to calendar a motion. Koger also generally stated that the defendants discriminated against him because of his race.

In support of his complaint, Koger alleged the following facts. On July 18, 2000, a police officer with the City of Parkland, Florida, stopped Koger and issued him a traffic citation for making an improper U-turn.[2] Koger entered a plea of not guilty to the traffic infraction, posted a bond in the amount of $75, and returned to his residence in New York. Moreover, Koger filed an affidavit with the traffic court, explaining that he did not observe a no U-turn sign, and that his crying child had distracted him.

Koger contended that his trial for the infraction, which was scheduled to occur in the County Court in and for Broward County, repeatedly was postponed, first from October 26, 2000, to January 4, 2001, and, subsequently, to March 7, 2001, and to May 10, 2001. On May 2, 2001, Koger filed in the traffic court a motion to dismiss the citation because he had not been tried within 180 days from

---

[2] Apparently in support of his claim of malicious prosecution, Koger also asserted in his amended complaint that, although he is an African American male, the officer identified Koger's race on the traffic infraction as a white male.

3

its issuance, in violation of Rule 6.326 of the Florida Rules of Traffic Court.[3] On May 10, 2001, without setting Koger's motion to dismiss on its calendar and in Koger's absence, the traffic court conducted a trial on the traffic infraction and found Koger guilty.

Koger further contended in his complaint that he never received proof of this conviction. Instead, he received a document from the traffic court, notifying him that he had to attend driving school to avoid being arrested and having the infraction appear on his driving record. Koger responded by sending a letter to various state and county officials, accusing them of "racketeering." Although the Clerk of the Court informed Koger in a letter that Marc Gold—the person Koger referred to as Jane/John Doe in his complaint—would review the matter, Koger never received a response from Gold. Koger also contended that his driving record does not reflect the infraction at issue in this case.[4]

---

[3] Rule 6.325(a) states as follows:

> Except as otherwise provided in this rule, every defendant charged with a noncriminal traffic infraction shall be brought to trial within 180 days of the date the defendant is served with the uniform traffic citation or otherwise charging document. If trial is not commenced within 180 days, the defendant shall be entitled to dismissal of the infraction charge.

See Florida Rules of Traffic Court, Rule 6.325.

[4] Koger attached to his amended complaint, among other documents, copies of (1) the traffic citation at issue, charging that he violated a traffic-control device by making an improper U-turn; (2) his written plea of not guilty; (3) notices of his hearing dates on October 26, 2000,

4

Koger generally argued in his complaint that the defendants violated his civil rights either by exceeding their authority in prosecuting his traffic infraction after the relevant 180-day period, or by failing to intervene or investigate. As relief, Koger sought (1) damages in the amount of $78,000, (2) injunctive relief in the form of an order "commanding defendants to stop and cease their activity,"[5] and (3) a declaration that the defendants denied him his civil rights.

The defendants responded by filing a motion to dismiss this amended complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). The defendants argued, among other things, that the complaint should be dismissed against Keith because (1) Keith was acting within his discretionary authority as a hearing officer when he adjudicated Koger guilty, and (2) Koger had failed to show that Keith violated a clearly established constitutional right. Moreover, the

and January 4, March 7, and May 10, 2001; (4) a sworn affidavit he attached to his motion to dismiss the traffic citation, in which he attested that his trial had not commenced prior to May 2, 2001, based on non-appearances by both parties; and (5) a court record, reflecting that (i) the court adjudicated Koger after conducting a court trial on May 10, 2001, (ii) ordered him to attend driving school and to pay $75 in fines and court costs, and (iii) applied his bond to these costs. Additional attachments included (1) letters from Koger to the Broward County Sheriff's Office, in which he threatened to file a lawsuit against the state and the Sheriff's Office; (2) a letter from the Sheriff's Office to Koger, informing him that, on the court's order, the Sheriff's Office had issued to the Clerk of the Court a check for the requested bond amount; and (3) a letter from the Clerk of the Court to Koger, informing him that his earlier correspondence had been forward to Gold, the person in charge of questions or requests made in reference to court adjudications.

[5] Although the complaint did not define "their activity," the district court construed this demand for relief as for an injunction, ordering the defendants from trying cases after the 180-day speedy-trial deadline imposed by Rule 6.325.

defendants argued that, because the allegations against the remaining plaintiffs appeared to involve only lack of supervision, they also were entitled to immunity. In the alternative, the defendant argued that Koger's complaint was barred by the Rooker-Feldman doctrine because federal courts, other than the Supreme Court, are barred from reviewing constitutional claims if the claims succeed only to the extent that the state court wrongly decided the issues before it.[6] The defendants also argued that the Eleventh Amendment was an absolute bar to Koger's complaint to the extent he was seeking damages against the state or its agencies.

After Koger failed to respond to this Rule 12(b)(6) motion, the district court granted it. The court first determined that Keith was entitled to qualified immunity because (1) Keith had been acting within the scope of his discretionary authority as a hearing officer when he adjudicated Koger guilty; and (2) Koger had failed to allege a clearly established constitutional violation. The court also concluded that,

---

[6] The defendants also argued in their motion to dismiss that Koger's claims were barred, pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court in Younger abstained from hearing a plaintiff's claim challenging the constitutionality of a state statute under which he was being prosecuted as a defendant, concluding that a sufficient state forum existed for the plaintiff to raise his constitutional defense. See Younger, 401 U.S. at 53-54, 91 S.Ct. at 755. However, this abstention doctrine is not triggered unless the relief sought in the federal court would create an "undue interference with state proceedings." See Wexler v. Lepore, 385 F.3d 1336, 1339 (11th Cir. 2004). Because the instant case involved an underlying criminal proceeding in which Koger's conviction was final, and because Koger did not assert that he had an appeal pending in the case, the relief Koger sought would not have created any "undue influence." See id.

although Koger's allegations against the Governor and Jane/John Doe were "not entirely clear," the allegations appeared to relate to the defendants' failures to supervise or intervene and, thus, also were barred under the doctrine of qualified immunity. Alternatively, the court determined that it should abstain from hearing Koger's § 1983 because, under the Rooker-Feldman doctrine, Koger was seeking review of a state court's final decision.

Koger is arguing on appeal that the court erred in granting the defendant's motion to dismiss because the defendants failed to answer either his amended complaint, or to provide through discovery documents that contradicted the facts alleged in his complaint. Koger asserts that the dismissal was not warranted because Keith erred in failing to grant Koger's motion to dismiss his traffic infraction after it was not tried within 180 days. He also generally asserts that the defendants were either directly or vicariously liable because (1) they exceeded the scope of their duties in prosecuting him, (2) Keith had no absolute immunity, and (3) Keith should have been disqualified "due to [his] malicious prosecution."[7]

---

[7] To the extent Koger appears to be arguing for the first time on appeal that he suffered a violation of his constitutional rights because (1) he was deprived of his right to be fairly represented in court, (2) his trial was continued for no reason and without his knowledge, and (3) he was denied his right to appeal in the state court, we decline to review these arguments in the first instance. See Stavropoulos v. Firestone, 361 F.3d 610, 616 n.6 (11th Cir. 2004) (declining to consider a legal theory that was not presented to the district court), petition for cert. filed, No. 04-1099 (U.S. Feb. 11, 2005).

We review de novo a district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6).  Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004).  To the extent Koger is challenging the court's dismissal prior to the defendants providing discovery, a complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief," or "when its allegations–on their face–show that an affirmative defense bars recovery on the claim."  See Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (citations and quotations omitted). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Id. at 1036 n.16 (citation omitted).  On the other hand, "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts are taken as true."  McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004) (quotation omitted).

i.    **Heck v. Humphrey**

To the extent Koger was seeking damages and declaratory relief, the Supreme Court held in Heck that:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

8

state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87, 114 S.Ct. at 2372. Thus, a plaintiff may not obtain damages under § 1983 if a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence." Id. Morever, although the district court did not discuss Heck in its order granting the Rule 12(b)(6) motion to dismiss, we may affirm a decision of the district court "on any adequate ground, even if it is other than the one on which the court actually relied." See Fisherman Against Destruction of Environment, Inc. v. Closter Farms, Inc., 300 F.3d 1294, 1296-97 (11th Cir. 2002) (citation and quotation omitted).

Liberally construing Koger's amended complaint, the only constitutional claims he raised that were cognizable under § 1983 were the denial of his right to a speedy trial and malicious prosecution. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed").[8] To the extent he was arguing a speedy-trial claim, the Sixth

---

[8] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

9

Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." See U.S. Const. amend. VI. We have concluded that, if a defendant's constitution right to a speedy-trial has been violated, dismissal of an indictment, information, or complaint is mandatory under Fed.R.Crim.P. 48(b)(3).[9] United States v. Dunn, 345 F.3d 1285, 1297 (11th Cir. 2003), cert. denied, 124 S.Ct. 2837 (2004).

To the extent Koger asserted a claim of malicious prosecution, a plaintiff seeking to establish such a violation in a § 1983 action must prove a violation of his Fourth Amendment right to be free from unreasonable seizures, in addition to the elements of the common law tort of malicious prosecution. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir.), cert. denied, 540 U.S. 879 (2003). We have looked to both state and federal law for the elements of common law tort. Id. To allege this common law claim in Florida, a plaintiff must assert, among other elements, that the termination of the original proceeding constituted a bona fide termination

---

Constitution and law, shall be liable to the party injured in an action at law [or] suit in entity . . .." See 42 U.S.C. § 1983. Thus, although Koger cited in support to Rule 6.325(a) of the Florida Rules of Traffic Court and alluded to various state-law claims, he could not allege a § 1983 claim in the absence of a constitutional violation. See Doe v. Kearney, 329 F.3d 1286, 1289-90 (11th Cir.), cert. denied, 540 U.S. 947 (2003).

[9] Rule 48(b)(3) provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." See Fed.R.Crim.P. 48(b)(3).

10

of that proceeding in favor of the present plaintiff. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1234 (11th Cir. 2004).

Thus, in raising both of these constitutional claims, Koger essentially was challenging either the legality of his conviction or his sentence. A judgment in Koger's favor in his speedy-trial claim would "necessarily imply the invalidity of his conviction." <u>See</u> <u>Heck</u>, 512 U.S. at 486-87, 114 S.Ct. at 237; <u>see</u> <u>also</u> <u>Dunn</u>, 345 F.3d at 1297. Similarly, judgment in Koger's favor in his malicious-prosecution claim was dependent on a finding that the prosecution terminated in his favor. <u>See</u> <u>Kingsland</u>, 382 F.3d at 1234. Koger's claims for damages and declaratory relief based on these constitutional violations, therefore, were barred under <u>Heck</u>.

To the extent Koger also was seeking injunctive relief in requesting an injunction "commanding defendants to stop and cease their activity," the Supreme Court has determined that, despite the limitations of <u>Heck</u>, a plaintiff may still seek prospective injunctive relief, <u>see</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997). To obtain such relief, however, a plaintiff must show that the relief will not "necessarily imply" the invalidity of his conviction or sentence. <u>See</u> <u>id.</u>, 520 U.S. at 648, 117 S.Ct. at 1589. Because Koger's requested prospective relief would have "necessarily implied" that the

11

defendants violated his speedy trial rights and/or maliciously prosecuted him and, thus, that his convictions were invalid, the court also did not err in dismissing Koger's claims to the extent he was seeking injunctive relief. Accordingly, the court did not err in dismissing for failure to state a claim Koger's § 1983 claims.

### ii. Qualified Immunity

Even if we were to conclude that <u>Heck</u> was inapplicable, the district court properly determined that the defendants were protected under the doctrine of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Kingsland</u>, 382 F.3d at 1231 (quotation and marks omitted). "Qualified immunity represents a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." <u>Id.</u> Thus, it is "appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1233 (11th Cir. 2003) (quotation omitted).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Kingsland, 382 F.3d at 1232 (quotation omitted). The burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Id. In determining whether the plaintiff has met his burden, courts must apply the following two-part test:

> (1) '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine 'whether the right was clearly established.'

Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). "[I]f no constitutional violation is established, then the officer prevails, and 'there is no necessity for further inquiries concerning qualified immunity.'" Storck, 354 F.3d at 1314 (quotation omitted).

In the instant case, Koger's allegations in his amended complaint reflect that the defendants were acting within the scope of their discretionary authority as a hearing officer, county official, and state official; thus, Koger had the burden of alleging a constitutional violation. See Kingsland, 382 F.3d at 1232. To the extent Koger was attempting to assert a claim of malicious prosecution, he had to allege,

13

as discussed above, that the prosecution terminated in his favor.  See id. at 1234.

Moreover, Koger had to allege that the defendants acted without probable cause.

See id.  Because Koger neither alleged facts showing that the prosecution

terminated in his favor, nor that probable cause was lacking in the prosecution of

his traffic infraction, he failed to assert a constitutional claim of malicious

prosecution.  See Marsh, 268 F.3d at 1036; see also Davila v. Delta Air Lines, Inc.,

326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual

deductions or legal conclusions masquerading as facts will not prevent dismissal

[for failure to state a claim]"), cert. denied, 540 U.S. 1016 (2003).

Furthermore, to the extent Koger was attempting to assert that he was denied

his right to a speedy trial under the Sixth Amendment, factors to be considered in a

speedy-trial claim include "(1) whether the delay before trial was uncommonly

long; (2) whether the government or the defendant is more to blame for that delay;

(3) whether, in due course, the defendant asserted his right to a speedy trial; and

(4) whether the defendant suffered prejudice as a result of the delay."  United

States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004) (citations omitted).  "The

first factor serves a triggering function; unless some 'presumptively prejudicial'

period of delay occurred, we need not conduct the remainder of the analysis."  Id.

(quotation omitted).  The delay at issue in this first factor—the time between the

14

date of the indictment and the trial date—is considered "presumptively prejudicial" as it approaches one year. Dunn, 345 F.3d at 1296.

Regardless, the Supreme Court has recognized that a defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with "reasonable diligence," and the defendant fails to show that the delay resulted in "specific prejudice to his defense." Harris, 376 F.3d at 1290 (quoting Doggett v. United States, 505 U.S. 647, 656, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992)). Moreover, we have determined that a defendant must demonstrate actual prejudice unless each of the first three factors "weigh[s] heavily against the government." Dunn, 345 F.3d at 1296. A defendant who must prove actual prejudice to establish a speedy trial claim can do so by showing (1) oppressive pretrial incarceration; (2) anxiety and concern resulting from the delay; or (3) the possibility that his defense will be impaired. Id. (citing United States v. Clark, 83 F.3d 1350, 1354 (11th Cir. 1996)).

Here, the delay between the issuance of the traffic citation at issue on July 18, 2000, and Koger's trial for this offense on May 10, 2001, was approaching one year and, thus, arguably was "presumptively prejudicial." See Dunn, 345 F.3d at 1296. Moreover, by filing his motion to dismiss, Koger asserted his right to a speedy trial before he was convicted. Nevertheless, Koger conceded in his

15

affidavit in support of his motion to dismiss that his trial was not commenced prior to May 2, 2001, based on non-appearances by both parties. Most importantly, Koger, who was not incarcerated because of the traffic infraction, did not allege in his amended complaint that he suffered "actual prejudice" from this delay. See Dunn, 345 F.3d at 1296. Thus, the district court did not err in concluding that Koger failed to assert a constitutional violation of his right to a speedy trial, and that Keith also was entitled to qualified immunity as to this claim. See Storck, 354 F.3d at 1314.

Finally, to the extent Koger asserted that the remaining defendants were liable based on their failure to investigate, and to the extent that this claim may be construed as a due process claim under the Fourteenth Amendment, we determined in Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), that, because substantive due process rights are created by the Constitution and "no amount of process can justify [their] infringement]," a plaintiff had no substantive due process right to an investigation of a constitutional claim by a sheriff's office. See id. at 1356. In addition, we concluded in Vinyard that the plaintiff was unable to show a procedural due process violation because, absent a showing by the plaintiff of federal or state law that gave her an entitlement to an internal investigation, there was no constitutionally protected liberty or property interest at stake in the case.

See id. Similarly, in this case, Koger failed to identify in his amended complaint a federal or state law under which he was entitled to an internal investigation. Furthermore, although Koger arguably also asserted that the remaining defendants were vicariously liable, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." See Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003).

Accordingly, we conclude that he district court did not err in granting the defendants' Rule 12(b)(6) motion to dismiss.[10] We, therefore, affirm.

**AFFIRMED.**

---

[10] The district court also dismissed Koger's § 1983 action based on the Rooker-Feldman doctrine. "Rooker-Feldman bars lower federal court jurisdiction where four criteria are met: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment." See Storck, 354 F.3d at 1310 n.1 (quotation omitted). Under the doctrine of absolute immunity, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." See Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) (quotations and marks omitted). Moreover, the Eleventh Amendment bars suits against state officials acting in their official capacities when the state is the real, substantial party in interest. See Shands Teaching Hosp. & Clinics, Inc. v. Beach St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000). However, because the district court properly dismissed this action under Heck and the doctrine of qualified immunity, we need not determine whether these other defenses were applicable. See Fisherman, 300 F.3d at 1296-97 (may affirm based on any adequate ground).