[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10630

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHALMER DETLING, II,
a.k.a. Chuck Detling,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00309-LMM-LTW-1

_____

**ON PETITION FOR REHEARING**

Before JORDAN and LAGOA, Circuit Judges, and CANNON,[*] District Judge.

PER CURIAM:

Chalmer Detling, II has filed a motion for panel rehearing, arguing that the panel overlooked one of his arguments. We grant the petition for panel rehearing, vacate the opinion previously issued, and issue this opinion in its place.

Mr. Detling appeals his jury convictions for wire fraud and aggravated identity theft. *See* 18 U.S.C. §§ 1343, 1028A(a)(1). Following oral argument and a review of the record, we affirm.[1]

The government's theory of the case at trial was that Mr. Detling, who was an attorney at the time of the offenses, applied for and obtained litigation advances from two financing companies—Mighty Financing LLC and Litigation Ventures LLC—in the names of his clients without their knowledge. He then used the fraudulently-obtained funding to pay his law firm's general expenses.

Mr. Detling first asserts a violation of the Speedy Trial Act, 18 U.S.C. § 3161. As we explain, this assertion fails.

---

[*] The Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, sitting by designation.

[1] As we write for the parties, we set out only what is necessary to explain our decision.

The Speedy Trial Act generally requires a defendant's trial to commence within 70 days from the filing date of the indictment or the defendant's first appearance, whichever occurs last. *See* 18 U.S.C. § 3161(c)(1). The Act, however, excludes certain periods of delay from the computation of time. For example, the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is not counted. *See* § 3161(h)(1)(D). We have held that this provision "excludes *all* time between the filing of the motion and the conclusion of the hearing at which it is addressed." *United States v. Harris*, 376 F.3d 1282, 1289 (11th Cir. 2004) (emphasis in original) (quoting *United States v. Dunn*, 345 F.3d 1285, 1292 (11th Cir. 2003)). The "entire time from the filing of the motion to the conclusion of the hearing is excludable, even when the hearing is deferred until trial." *United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991).

The district court deferred ruling on Mr. Detling's motion to strike surplusage in the indictment until the pretrial conference. At that time, it heard Mr. Detling's motion to strike surplusage and his motion in limine—both of which concerned his disbarment proceedings in Georgia—and ruled on both. *See* D.E. 168 at 46, 61–62 (excluding evidence of disbarment at trial and ordering the government to "change" the indictment to get rid of language that "Mr. Detling is currently not licensed to practice law in the state of Georgia"). *See also* D.E. 139 at 2 ("The Court ordered the Government to revise the Indictment to remove language that the defendant is not licensed . . . ."). Because the time from the filing of the

motion to strike surplusage on October 30, 2018, until the pretrial conference on October 13, 2021, was excluded for the purposes of the speedy trial calculation, *see Harris*, 376 F.3d at 1289, there was no Speedy Trial violation.[2]

Mr. Detling next argues that there was insufficient evidence to support his convictions. We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict. *See United States v. Godwin*, 765 F.3d 1306, 1319 (11th Cir. 2014). The question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The evidence supporting Mr.

---

[2] Mr. Detling asserts that the district court was not permitted to hold a hearing on his motions because N.D. Ga. Local Rule 12.1(E)(1) only authorized the magistrate judge to do so. We disagree.

Rule 12.1(E)(1), which applies to cases in the Atlanta Division, states that motions in criminal cases are "initially assigned" to a magistrate judge, who "shall conduct any required or necessary hearings." By providing that motions are "initially assigned" to a magistrate judge, Rule 12.1(E)(1) contemplates that the district court can and will handle such matters as well. Indeed, N.D. Ga. Local Rule 59 expressly provides that reports and recommendations issued by a magistrate judge on dispositive motions, and orders issued by a magistrate judge on non-dispositive motions, are subject to review by the district court upon objections from the parties. Mr. Detling cites to no authority for the proposition that a district court lacks the authority to hold a hearing on a non-dispositive motion just because such a motion is initially assigned to a magistrate judge.

Detling's convictions was close to overwhelming, and we therefore affirm.[3]

At trial, the government more than met its burden. It presented the testimony of four former Detling Law Group employees, including Aimee Ingram (the receptionist who later became a paralegal and office manager) and three attorneys who worked at the firm—Mackenzie Cole, Brooks Neely, and Ben Copeland. They testified that Mr. Detling was in charge of the firm, and that no major decision was made without his permission. Ms. Ingram and Ms. Cole also testified that they did not have access to or control over the firm's accounts. The jury also heard testimony from four representatives of Litigation Ventures and Mighty Financing who stated that they dealt with Mr. Detling exclusively on the litigation advances, and their testimony was corroborated by numerous emails and other business records. They also testified that, had they known that Mr. Detling's clients had not authorized the advances or received the funds, they never would have approved the

---

[3] To convict Mr. Detling of wire fraud, the government needed to prove beyond a reasonable doubt that he intentionally participated in a scheme to defraud and that he used the interstate wires in furtherance of the scheme. *See United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). To convict him of aggravated identity theft, the government needed to prove that he (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person or a false identification document (4) during and in relation to the wire fraud offense. *See United States v. Bonilla*, 579 F.3d 1233, 1242 (11th Cir. 2009).

funding.  The evidence further showed that Mr. Detling personally signed the applications for the advances.  He also picked up and endorsed each of the fraudulently-obtained checks.

The government also presented testimony from several of Mr. Detling's clients, who were victims of the scheme.  They explained that they never signed or authorized the fraudulent financing.  FBI Special Agent Antoinette Ferrari testified that she had traced the fraudulently obtained funds, and she determined that the funds did not go to Mr. Detling's clients and instead were used for the firm's expenses.

Mr. Detling finally argues that the district court erred in truncating and omitting part of the instruction on deliberate ignorance.  The district court instructed the jury that "knowledge" could be found if Mr. Detling was "aware of a high probability that the fact existed" without also instructing the jury that it must first find that he "took deliberate steps to avoid the knowledge."  We agree with Mr. Detling that the failure to include this latter portion was error.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

We nevertheless affirm because the error was harmless.  Given the nearly overwhelming evidence of intent, the truncated deliberate ignorance instruction did not affect Mr. Detling's substantial rights.  *See United States v. Rivera*, 944 F.2d 1563, 1572 (11th Cir. 1991) (error in giving deliberate indifference instruction was harmless because the "jury was also instructed that it could convict based on a theory of actual knowledge" and "there was sufficient

22-10630                Opinion of the Court                7

evidence to support the convictions under that theory[.]"); *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) ("instructing the jury on deliberate ignorance is harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge").   Here, the jury was instructed that it could convict based on his actual knowledge, *see* D.E. 153 at 8–9, and, as explained above, there was plenty of evidence that Mr. Detling had actual knowledge of the fraud.  For instance, the representatives of the financing companies testified that they only dealt with Mr. Detling on the fraudulent litigation advances, and Mr. Detling's signature appeared on the applications for the fraudulent financing.  *See* D.E. 214 at 143; D.E. 215 at 194–95, 213; D.E. 217 at 101–103, 120–21.  Moreover, the government did not argue in closing that Mr. Detling was deliberately ignorant but rather told the jury that he intentionally engaged in fraud.  *See* D.E. 219 at 92 ("He's not randomly relying on Ms. Cole and Ms. Ingram and sticking his head in the sand and not finding out what's going on.  He is making representation, after representation to the financing companies . . . .").  Given the significant amount of evidence that Mr. Detling knowingly and intentionally committed wire fraud and aggravated identity theft, the district court's error in omitting part of the deliberate ignorance instruction was harmless.

**AFFIRMED.**