[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 20-11654

————————————

RUPERTO HERNANDEZ ZARATE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A215-569-562

————————————

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

Under federal law, a conviction for a "crime involving moral turpitude" (a CIMT) can have significant immigration consequences. For example, a person convicted of a CIMT is not eligible for the discretionary relief of cancellation of removal. *See* 8 U.S.C. §§ 1182(a)(2) & 1229b(b)(1)(c). The question presented in this appeal—one which has led to a circuit split—is whether a conviction for falsely representing a social security number, *see* 42 U.S.C. § 408(a)(7)(B), is a CIMT.

I

In 2019, Ruperto Hernandez Zarate—a citizen and national of Mexico—was convicted of violating 42 U.S.C. § 408(a)(7)(B) for using a social security card that was not his. As relevant here, that provision makes it a felony for someone "(7) . . . for the purpose of obtaining anything of value from any person, or for any other purpose . . . (B) with intent to deceive, [to] falsely represent[ ] a number to be the [S]ocial [S]ecurity account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the [S]ocial [S]ecurity account number assigned by the Commissioner of Social Security to him or to such other person[.]" 42 U.S.C. § 408(a)(7)(B).

An immigration judge ruled that Mr. Zarate was statutorily ineligible for cancellation of removal because his conviction under § 408(a)(7)(B) was for a CIMT, but otherwise would have granted

him that relief. Mr. Zarate appealed to the Board of Immigration Appeals, which agreed with the immigration judge and dismissed the appeal. *See* A.R. at 3–5. The BIA explained that § 408(a)(7)(B) requires intent to deceive, and as a result Mr. Zarate's conviction was for a CIMT. Noting that the circuits were divided on the issue, it quoted our decision in *Walker v. U.S. Att'y Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015), for the proposition that, "[g]enerally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude." The BIA did not, however, address whether a violation of § 407(a)(7)(B) is inherently base, vile, or depraved. And that, as we will later explain, is a significant omission.

## II

We "review *de novo* the legal question of whether a[ ] conviction qualifies as a [CIMT]." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240 (11th Cir. 2016). In determining whether a conviction is a CIMT, we employ the categorical approach (if the statute of conviction is not divisible and sets out alternative means of committing a single offense) or the modified categorical approach (if the statute of conviction is divisible and creates separate offenses). *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762–63 (2021); *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303–04 (11th Cir. 2020). This means that "[w]hether a crime involves the depravity or fraud necessary to be one of moral turpitude depends on the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct." *Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002). *See also*

*Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1284 (11th Cir. 2009) ("In other words, the determination that a crime involves moral turpitude is made categorically, based on the statutory definition or nature of the crime, not the specific conduct predicating a particular conviction."). We ask whether the "least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Gelin*, 837 F.3d at 1241 (internal quotation marks and citation omitted).[1]

### III

CIMTs have been part of the immigration lexicon since the late 19th century, initially appearing in laws providing for the exclusion of certain categories of persons from the United States. *See generally Jordan v. De George*, 341 U.S. 223, 229 n.14 (1951). Remarkably, however, the term "moral turpitude" has never been defined by federal statute or rule, and its contours have been left to case-by-case adjudication by administrative and judicial tribunals for over a century. Because "moral turpitude" had its legal origins in defamation law as 19th-century common-law courts sought a

---

[1] Where the statute of conviction is divisible—i.e., where it sets out different offenses—and some of the crimes set out in the statute involve moral turpitude and others do not, the person must "prove that his actual, historical offense of conviction" is not a CIMT. *See Pereida*, 141 S. Ct. at 763. Here, however, it is undisputed that Mr. Zarate was convicted under § 408(a)(7)(B). So the question for us is a purely legal one: whether a conviction under that provision is a CIMT.

manageable test for slander and libel per se, *see* Julia Ann Simon-Kerr, *Moral Turpitude*, 2012 Utah L. Rev. 1001, 1010–25 (2012), the term has proven amorphous (and difficult to define and confine) in the immigration arena.

The BIA has, understandably, described "moral turpitude" as a "nebulous concept." *In re Tran*, 21 I. & N. Dec. 291, 292 (BIA 1996). That may be a kind characterization. As one commentator has put it, "[t]he term 'moral turpitude' is probably incapable of precise definition in a legal sense, since it basically involves moral or ethical judgments." Annotation, *What Constitutes "Crime Involving Moral Turpitude" Within Meaning of [§§] 212(a)(9) and 241(a)(4) of Immigration and Nationality Act (8 U.S.C.A. [§§] 1182(a)(9), 1251(a)(4)), and Similar Predecessor Statutes Providing for Exclusion or Deportation of Aliens Convicted of Such Crime[s]*, 23 A.L.R. Fed. 480, § 2[a] (1975 & 2021 Supp.). Some have remarked that, to the extent that definitions of the term exist, "[i]t's difficult to make sense of . . . [them]." *Arias v. Lynch*, 834 F.3d 823, 831 (7th Cir. 2016) (Posner, J., concurring in the judgment).

Nevertheless, the Supreme Court has held that the term "moral turpitude" is not unconstitutionally vague. "Whatever else" it "may mean in peripheral cases," the Court said, case law "make[s] it plain that crimes in which fraud was an ingredient have

always been regarded as involving moral turpitude." *De George*, 341 U.S. at 232.[2]

---

[2] Justice Jackson, joined by Justices Frankfurter and Black, dissented in *De George* because they believed that "the phrase 'crime involving moral turpitude,' as found in the Immigration Act, has no sufficiently definite meaning to be a constitutional standard for deportation." 341 U.S. at 232 (Jackson, J., dissenting) (footnote omitted). As Justice Jackson put it in his distinctive prose, the phrase "is not one which has settled significance from being words of art in the profession. If we go to dictionaries, the last resort of the baffled judge, we learn little except that the expression is redundant, for turpitude alone means moral wickedness and depravity and moral turpitude seems to mean little more than morally immoral. The Government confesses that it is 'a term that is not clearly defined,' . . . [and] [e]xcept for the Court's opinion, there appears to be universal recognition that we have here an undefined and undefinable standard." *Id.* at 234–35 (footnotes omitted). As to the government's suggestion that "moral turpitude" be measured against the moral standards that prevail in contemporary society to determine immorality, Justice Jackson had this response: "Can we accept 'the moral standards that prevail in contemporary society' as a sufficiently definite standard for the purposes of the Act? This is a large country and acts that are regarded as criminal in some states are lawful in others. We suspect that moral standards which prevail as to possession or sale of liquor that has evaded tax may not be uniform in all parts of the country, nor in all levels of 'contemporary society.' How should we ascertain the moral sentiments of masses of persons on any better basis than a guess?" *Id.* at 237–38.

In our view, Justice Jackson got it right. And several of our colleagues in other circuits agree. *See Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1261 (9th Cir. 2019) (Fletcher, J., concurring) ("Now, almost seventy years after *De George*, 'moral turpitude' is as undefined and undefinable as ever . . . . It is time to recognize another failed enterprise.") (citation omitted); *Arias*, 834 F.3d at 835 (Posner, J., concurring in the judgment) ("Alas, a great dissent by a great Justice has

20-11654              Opinion of the Court                    7

So what exactly does "moral turpitude" mean?  We turn to that question next.

**A**

According to the BIA, "moral turpitude" refers to "conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.  To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833–34 (BIA 2016) (internal quotation marks and citation omitted).  We give deference to the BIA's definition, as well as to its application of that definition in precedential opinions.  *See Negusie v. Holder*, 555 U.S. 511, 516–17 (2009); *Arevalo v. U.S. Att'y Gen.*, 872 F.3d 1184, 1187–88 (11th Cir. 2017).

Our cases similarly explain that moral turpitude involves "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Smith v. U.S. Att'y Gen.*, 983 F.3d 1206, 1210 (11th Cir. 2020) (quoting *Keungne*, 561 F.3d at 1284).  This is basically the definition first used by federal courts—including the former Fifth Circuit—in immigration cases addressing moral turpitude in the early 20th century.  *See, e.g., Coykendall v. Skrmetta*,

---

been forgotten.").  But we are of course bound by the majority opinion in *De George.*

22 F.2d 120, 120–21 (5th Cir. 1927); *Ex parte Machida*, 277 F. 239, 241 (W.D. Wash. 1921); *United States v. Uhl*, 203 F. 152, 154 (S.D.N.Y. 1913), *aff'd*, 210 F. 860 (2d Cir. 1914). *Accord* 1 John Bouvier, Bouvier's Law Dictionary and Concise Encyclopedia 846 (1914) (explaining that moral turpitude, "as ground of exclusion of an alien, means an act of baseness, vileness or depravity in the private and social duties which one owes to society, and as applied to offenses includes only such crimes as manifest personal depravity or baseness"); 5 Judicial and Statutory Definitions of Words and Phrases 4581 (West 1904) (defining moral turpitude as "anything done contrary to justice, honesty, principle, or good morals").[3]

Consistent with the two elements identified by the BIA—reprehensible conduct and a culpable mental state—we agree with the Fourth Circuit that "by using the phrase 'involving moral turpitude' to define a qualifying crime, Congress meant to refer to more than simply the wrong inherent in violating [a] statute. Otherwise, the requirement that moral turpitude be involved would be superfluous. It follows, therefore, that a crime involving moral turpitude must involve conduct that not only violates a statute but also independently violates a moral norm." *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014). Indeed, that is the view we expressed in our early immigration cases addressing the concept of

---

[3] For an early scholarly attempt to grapple with the concept of moral turpitude, see Note, *Crimes Involving Moral Turpitude*, 43 Harv. L. Rev. 117 (1929).

moral turpitude. *See Skrmetta,* 22 F.2d at 121 ("From the fact that those acts have by statute been made punishable as crimes it does not follow that they are inherently immoral, or involve moral turpitude, within the meaning of the provision in question."); *Guarneri v. Kessler,* 98 F.2d 580, 581 (5th Cir. 1938) ("All federal offenses are statutory but that does not fix their inherent nature.").

Our survey of the legal landscape indicates that fraud offenses are—rightly or wrongly—categorically deemed to involve moral turpitude. As noted, the Supreme Court in *De George* rejected a vagueness challenge to the phrase "involving moral turpitude" by explaining that "crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *De George,* 341 U.S. at 232. Given that pronouncement, it would be inappropriate for us (regardless of our own views) to now declare that fraud offenses are not always CIMTs.

Based on *De George,* it seems to us that fraud may be a *sui generis* category necessarily involving moral turpitude, and that only non-fraud offenses must also satisfy the "inherently base, vile, or depraved" requirement to constitute CIMTs. Such a conclusion, we believe, is supported by a number of decisions from the BIA and our sister circuits. *See Garcia-Martinez v. Barr,* 921 F.3d 674, 676 (7th Cir. 2019) ("The Supreme Court has held that crimes involving fraud, for example, almost always involve moral turpitude."); *Bobadilla v. Holder,* 679 F.3d 1052, 1057 (8th Cir. 2012) ("The Supreme Court established in [*De George*] that a crime in which fraud is an element is categorically a CIMT."); *Navarro-Lopez v.*

*Gonzales*, 503 F.3d 1063, 1074 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring, joined by a majority of the en banc court) ("Crimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity.") (internal quotation marks and citation omitted), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011); *Guarneri*, 98 F.2d at 581 ("Fraud is an ingredient of the offense [of smuggling] . . . . [T]o clandestinely introduce goods into the United States with intent to defraud the revenue is dishonest and fraudulent and involves moral turpitude."); *Mercer v. Lence*, 96 F.2d 122, 124 (10th Cir. 1938) ("conspiring to defraud a person by deceit and falsehood" is an "offense of moral turpitude"); *Matter of Kochlani*, 24 I. & N. Dec. 128, 130 (BIA 2007) ("[C]rimes that have a specific intent to defraud as an element have always been found to involve moral turpitude."). *Cf. United States v. Smith*, 420 F.2d 428, 432 (5th Cir. 1970) (addressing whether a prior conviction could be used for impeachment and explaining that a crime involves moral turpitude if "the ingredient of fraud" is present). [4]

---

[4] Commentators largely seem to be in agreement. *See, e.g.,* Lindsay M. Kornegay & Evan Tsen Lee, *Why Deporting Immigrants for "Crimes Involving Moral Turpitude" is Now Unconstitutional*, 13 Duke J. Const. L. & Pub. Pol. 47, 64 (2017) ("While the fraud precedents appear mixed, these cases can be reconciled by focusing on whether fraudulent intent is an essential element of the conviction."); Brian C. Harms, *Redefining "Crimes of Moral Turpitude": A Proposal to Congress*, 15 Geo. Immigr. L. J. 259, 269 (2001) ("Crimes of fraud against the government or its authority, like all crimes with an

Nevertheless, as explained below, this treatment of fraud offenses does not help the government here.  That is because under the categorical approach the crime Mr. Zarate committed does not include fraud as an element or ingredient.

## B

Applying the categorical approach, we look to the elements of 42 U.S.C. § 408(a)(7)(B), Mr. Zarate's statute of conviction.  *See, e.g., Keungne*, 561 F.3d at 1284.  We have explained that the "elements of [an] offense [under § 408(a)(7)(B)] are (1) false representation of a Social Security number, (2) with intent to deceive, (3) for any purpose."  *United States v. Harris*, 376 F.3d 1282, 1291 (11th Cir. 2004).

Fraud requires that a misrepresentation be made to obtain a benefit from someone or cause a detriment to someone.  *See generally* Restatement (Second) of Torts § 531 (A.L.I. 1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons . . . whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in

element of fraud, are 'crimes involving moral turpitude.'").  *But see Navarro-Lopez*, 593 F.3d at 1069 (Pregerson, J., specially concurring) (asserting that "[c]rimes involving fraud are not a per se category of crimes involving moral turpitude" and "merely present examples of conduct that may fall under the umbrella of inherently base and vile conduct that shocks the conscience").

the type of transaction in which he intends or has reason to expect their conduct to be influenced."); Black's Law Dictionary 775 (10th ed. 2014) (defining fraud as a "knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment"); Merriam-Webster's Dictionary of Law 202 (2016) (defining fraud as "any act, expression, omission or concealment calculated to deceive another to his or her disadvantage"). A violation of § 408(a)(7)(B) can sometimes be for the "purpose of obtaining anything of value from any person"—which would involve fraud—but under the categorical approach the "least culpable conduct necessary to sustain a conviction," *Gelin*, 837 F.3d at 1241 (citation omitted), is the false representation of the Social Security number for "any other purpose," i.e., for a non-fraudulent purpose. *See Harris*, 376 F.3d at 1291.

In Mr. Zarate's case, the BIA concluded that a violation of § 408(a)(7)(B) involves moral turpitude because the statute requires intent to deceive. But that analysis is both inconsistent with BIA precedent (which we discuss below) and incomplete because it fails to address the second moral turpitude element: inherent baseness, vileness, or depravity. As we explain, the BIA has long held that non-fraud offenses involving deception are not automatically CIMTs.

## C

We start our discussion with the BIA's treatment of offenses which require deception or misrepresentation but not fraud. The relevant decisions are *Matter of M—*, 1 I. & N. Dec. 619 (BIA 1943),

*Matter of R—*, 5 I. & N. Dec. 29 (BIA 1952), *Matter of B—M—*, 6 I. & N. Dec. 806 (BIA 1955), *Matter of B—*, 7 I. & N. Dec. 342 (BIA 1956), *Matter of Espinosa*, 10 I. & N. Dec. 98 (BIA 1962), *Matter of Marchena*, 12 I. & N. Dec. 355 (BIA 1967), *Matter of Flores*, 17 I. & N. Dec. 225 (BIA 1980), and *In re Jurado-Delgado*, 24 I. & N. Dec. 29 (BIA 2006). Each one remains good law today, and we discuss them in detail.

As early as 1943, the BIA found that crimes involving a false representation to the government could constitute CIMTs, even if they lacked an explicit element of fraud, provided that the representation was inherently fraudulent. In *Matter of M—*, the BIA considered whether knowingly and deliberately making a false statement as to citizenship in a Selective Service questionnaire for the purpose of evading military service was a CIMT. *See* 1 I. & N. Dec. at 619. The BIA found that it was because such a statement was "akin to fraud, i.e., an endeavor to alter rights by deception." *Id.* at 621. In 1952, the BIA affirmed this decision in *Matter of R—*, reiterating the inherently fraudulent nature of the offense and finding strong support from the Supreme Court's then-new decision in *De George*. *See* 5 I. & N. Dec. at 38.

In *Matter of B—M—*, decided in 1955, the BIA addressed whether a violation of 18 U.S.C. § 1001—a divisible false statement statute which at the time set out three different crimes—necessarily constituted a CIMT. *See* 6 I. & N. Dec. at 807–09. Although it had previously ruled that a false statement in violation of § 1001 constituted a CIMT when the statement is made to obtain a

benefit, *see Matter of P—*, 6 I. & N. Dec. 193, 194 (BIA 1954) (extension of a visa to stay in the United States), the BIA concluded in *Matter of B—M—* that applicable precedents "do not require a conclusion that every violation of . . . § 1001 necessarily involves the element of fraud and we must, therefore, examine the statute to determine whether the crime which the [person] is alleged to have committed involves moral turpitude." 6 I. & N. Dec. at 808. The person in *Matter of B—M—* had been convicted under the second clause of § 1001, which prohibited the making of any "false, fictitious, or fraudulent statements or misrepresentations." The BIA explained, however, that "the fact that the word 'fraudulent' appears does not compel the conclusion that every offense under this clause would involve moral turpitude since the offense may have consisted only of a false and not a fraudulent statement." *Id.* at 808. *See also id.* at 809 ("Our decision in *Matter of P—* . . . was not intended as a definitive ruling that all violations of 18 U.S.C. [§] 1001 necessarily involve moral turpitude, and any statements therein which might indicate such a conclusion are hereby modified accordingly."). Because the person in *Matter of B—M—* had not made any fraudulent statement when falsely representing that she was not employed by the United States, her false statement "did not constitute a crime involving moral turpitude." *Id.* at 809.

Seven years later, in *Matter of Espinosa*, the BIA again addressed whether a conviction for violation of 18 U.S.C. § 1001 constituted a CIMT. It again ruled that a false statement or representation does not necessarily involve moral turpitude. In that

decision, the person was convicted under the third clause of § 1001, which prohibited the making or use of "any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry." The BIA ruled that such a conviction did not necessarily involve moral turpitude and could not "at the present serve as the basis for deportation." 10 I. & N. Dec. at 99. The BIA also held that, even if the conviction had been under the second clause of § 1001—for making any false, fictitious, or fraudulent statements or misrepresentations—the offense was not a CIMT. "[T]he simple answer lies in the fact that the record does not establish that there was a conviction for fraud rather than for false misrepresentation. The second clause of . . . § 1001 lists the commission of several acts which can constitute the crime. These acts are set forth in the disjunctive . . . . Under such circumstances, there is a question as to whether the conviction was based upon the existence of one element rather than another." *Id.* at 99–100.[5]

---

[5] The BIA has since held that the current version of 18 U.S.C. § 1001(a)(2), which prohibits knowingly and willfully making "any materially false, fictitious, or fraudulent statement or representation" within the jurisdiction of the federal government, is a CIMT because the false statement (1) must have "the capacity to impair or pervert the functioning of a [g]overnment agency" and (2) must be made with intent to deceive or mislead. *See Matter of Pinzon*, 26 I. & N. Dec. 189, 193 (BIA 2013). In so holding, the BIA expressly distinguished prior decisions like *Matter of Espinosa*. *See id.* at 194 ("[T]he decisions the respondent relies on addressed an earlier version of 18 U.S.C. § 1001 and are therefore distinguishable."). As one commentator has remarked, *Matter of Pinzon* "reflects . . . an adjustment of decisional law consonant with a

*Matter of Marchena*, decided by the BIA in 1967, reaffirmed the decision in *Matter of B—M—*. At issue in *Matter of Marchena* was a conviction under the second clause of § 1001—the clause prohibiting the making of any "false, fictitious, or fraudulent statements or misrepresentations." *See* 12 I. & N. Dec. at 356. The BIA held that the minimum conduct proscribed by the clause was a false statement and not a fraudulent one, and therefore the conviction was not a CIMT: "On this record the conviction may have been for making a false statement, and we may not assume that the plea of guilty concerned a fraudulent statement. The crime cannot be held to involve moral turpitude." *Id.* at 357.[6]

Less than a year after *Matter of B—M—* was decided, in *Matter of B—*, the BIA addressed a conviction under 18 U.S.C. § 1542

---

rewritten criminal statute." Hans Christian Linnartz, *Lies, Damn Lies, and Lies Involving Moral Turpitude: When Does a False Statement Carry Immigration Consequences?*, 11 Charleston L. Rev. 665, 674–75 (2017).

[6] Shortly before *Matter of B—M—* was issued, the BIA held that a violation of a provision of the Food, Drug, and Cosmetic Act prohibiting certain actions done "with intent to defraud or mislead," such as selling margarine labeled as butter, was a CIMT. *See Matter of P—*, 6 I. & N. Dec. 795, 797–98 (BIA 1955) (emphasis removed). The BIA explained that, "[s]ince it has been determined that 21 U.S.C. [§] 333(b) contains an inherent intent to deceive or mislead and because moral turpitude inheres in the criminal intent, we conclude that the offenses for which respondent was convicted in 1954 were inherently wrong and morally reprehensible, not merely prohibited by statute of recent origin." *Id.* at 798. Although the BIA still cites *Matter of P—* occasionally for the definition of moral turpitude, its reasoning—if read broadly—is incompatible with *Matter of B—M—* and its progeny.

for making a false statement "in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another." Because the statute required proof that the false statement be made for the purpose of inducing or securing a U.S. passport—i.e., obtaining a benefit—the government had to show that "the applicant must knowingly make a false statement with the specific intent that the false statement should be acted upon" by the government. *See* 7 I. & N. Dec. at 343–44. "Fraud, therefore, must be used in connection with the inducing or the securing of the issuance of the passport," and as a result the offense "involves moral turpitude." *Id.* at 344.

In *Matter of Acosta*, a 1973 decision, the BIA similarly held that a conviction under 18 U.S.C. § 922(a)(6)—for making a false statement in the acquisition of a firearm—is a CIMT. 14 I. & N. Dec. 338, 338–39 (BIA 1973). Citing *Matter of B—*, the BIA reasoned that a statement intended or likely to deceive a licensed firearms dealer involves moral turpitude "because fraud and materiality are essential elements of the crime." *Id.*

In 1980, the BIA held in *Matter of Flores* that a conviction under 18 U.S.C. § 1426(b), which criminalizes uttering or selling false or counterfeit paper relating to registry of aliens with knowledge of their counterfeit nature, constituted a CIMT because the criminalized conduct "inherently involves a deliberate deception of the government and an impairment of its lawful functions," making "fraudulent conduct . . . implicit in the statute." 17 I. & N.

Dec. at 230.  The BIA made clear that "it is not necessary that [a] statute . . . include the usual phraseology concerning fraud in order for it to involve moral turpitude," so long as "fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime." *Id.* at 228.  In this way, *Matter of Flores* built out the principle recognized in *Matter of B—*: crimes involving false statements can lack a specific fraud element but still be inherently fraudulent—and thus a CIMT under *De George*—depending on the nature of the acts involved or the results intended.

In 2013, the BIA applied *Matter of Flores* in *In re Jurado-Delgado* to find that a Pennsylvania statute which criminalized making a false statement with "intent to mislead a public servant in performing his official function," 18 Pa. Cons. Stat. § 4904(a), is a CIMT.  24 I. & N. Dec. at 34.  Though the BIA did not specifically say the criminalized conduct was inherently fraudulent, it relied on *Matter of Flores*, focused on the "intent to mislead," and recognized the moral turpitude involved in impairing and obstructing government functions.  *See id.* at 35.  *See also Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018) ("As the BIA's rationale in *Matter of Jurado–Delgado* suggests, an act of obstruction, standing alone, does not categorically involve moral turpitude.  In other words, there must be some other aggravating element that pushes a mere

violation of the law into the territory of moral depravity.") (citation omitted).[7]

These BIA decisions teach that making a false statement or engaging in general deception is not necessarily the same thing as fraud. *See Matter of Correa-Garces*, 20 I. & N. Dec. 451, 454 (BIA 1992) ("Crimes involving fraud are considered to be crimes involving moral turpitude," while "[c]onvictions for making false statements have been found to involve moral turpitude."). As a result, a violation of § 408(a)(7)(B) is not categorically a CIMT: "The intent to deceive is not equivalent to the intent to defraud, which generally requires an intent to obtain some benefit or cause a detriment. There are many situations in which a person may have the intent to deceive without having the intent to defraud." *Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009) (citation omitted). *Accord Arias*, 834 F.3d at 826 ("[I]t is difficult to see how a violation of § 408(a)(7)(B) is categorically a crime involving moral turpitude . . . . The statute criminalizes falsely representing a [S]ocial [S]ecurity number to be one's own for purposes of obtaining various

---

[7] One unpublished BIA decision questions whether *Matter of Marchena*, *Matter of Espinosa*, and *Matter of B—M—* still hold precedential value in the wake of *Matter of Flores* and its progeny. *In re Hill*, No. AXXX XX0 667, 2008 WL 5181745, at *2 n.1 (BIA Nov. 12, 2008). But this overreads *Matter of Flores*. The consistent principle underlying all of the BIA's decisions is that crimes involving false statements which do not contain fraud as either an element or ingredient, perhaps inherently, do not necessarily constitute CIMTs. This is certainly not the case for a crime involving the making of a false statement "for any purpose."

[S]ocial [S]ecurity benefits but also 'for *any* other purpose.' It is not difficult to imagine some purposes for which falsely using a [S]ocial [S]ecurity number would not be 'inherently base, vile, or depraved.'"); *Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1184–85 (9th Cir. 2000) (holding that § 408(a)(7)(B) is not a CIMT in part because the acts it proscribes are "*mala prohibita*, not *mala in se*"). This conclusion is consistent with decisions from the Fourth and Tenth Circuits holding that violations of state and local identity theft laws were not CIMTs when they lacked any ingredient of fraud or interference with a government function. *See Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020) ("[T]he statute at issue here need not involve fraud or harm to the government. Because a conviction under Va. Code Ann. § 18.2–186.3(B1) does not require morally reprehensible conduct, Nunez-Vasquez's identity theft conviction is not a CIMT."); *Flores-Molina v. Sessions*, 850 F.3d 1150, 1168 (10th Cir. 2017) ("For a false statement to violate [Denver Municipal Code] § 38-40, it need not involve fraud, cause harm to the government or anyone else, obtain a benefit for the speaker, or be given with the intent to achieve any of these ends.").

We recognize that the Fifth and Eighth Circuits have held that a violation of § 408(a)(7)(B) is a CIMT, and that we have come to the same conclusion in an unpublished opinion. *See, e.g., Munoz-Rivera v. Wilkinson*, 986 F.3d 587, 591 (5th Cir. 2021); *Moreno-Silva v. U.S. Att'y Gen.*, 481 F. App'x 611, 613 (11th Cir. 2012); *Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir.

2010). But we find these decisions unpersuasive for various reasons.

First, both we and the Fifth Circuit failed to consider the numerous BIA decisions discussed above, incorrectly relied on the "intent to deceive" and dishonesty elements of the statute to declare that moral turpitude is unequivocally involved, and did not recognize that fraud generally requires acting to obtain a benefit or cause a detriment. *See Munoz-Rivera*, 986 F.3d at 591; *Moreno-Silva*, 481 F. App'x at 613. *De George* holds that fraud offenses are categorically CIMTs, *see* 341 U.S. at 232, but it does not go further than that. *See Barrera-Lima v. Sessions*, 901 F.3d 1108, 1122 (9th Cir. 2018) ("We have repeatedly cautioned that . . . crimes other than fraud must be more than serious; [they] must offend the most fundamental moral values of society, or as some would say, shock the public conscience.") (internal quotation marks omitted); *Arias*, 837 F.3d at 835 (Posner, J., concurring in the judgment) ("[N]otice that the word used by the Court [in *De George*] to describe a crime of moral turpitude was 'fraud,' not 'deception,' and *De George* was a fraud case in the core sense of 'fraud': it was a conspiracy to defraud the federal government of tax revenues."). And, to repeat what we've said, under the categorical approach § 408(a)(7)(B) does not have fraud as a necessary element or ingredient. The "minimum conduct criminalized," *Munoz-Rivera*, 986 F.3d at 591, is the

false representation of a Social Security number, with intent to deceive, for "any purpose." *See Harris*, 376 F.3d at 1291.[8]

Second, the Eighth Circuit based its holding that a violation of § 408(a)(7)(B) is a CIMT on the premise that "[i]ntent to deceive for the purpose of wrongfully obtaining a benefit is an essential element of § 408(a)(7)(B)." *Guardado-Garcia*, 615 F.3d at 902. That statutory premise, however, is mistaken. As we set out in *Harris*, 376 F.3d at 1291, the conduct proscribed by the statute can be undertaken for "any purpose." Under the categorical approach, that means a violation of this provision does not have fraud as an element or ingredient and therefore is not necessarily a CIMT. Again, if the intent to deceive is not for the purpose of obtaining a benefit or causing a detriment, moral turpitude is not automatically involved.

Third, the BIA's two-pronged moral turpitude standard requires not just a culpable mental state, but also conduct that is reprehensible, i.e., inherently base, vile, or depraved. *See Silva-Trevino*, 26 I. & N. Dec. at 833–34. We give deference to the BIA's definition of moral turpitude, *see Negusie*, 555 U.S. at 516–17, and it is inappropriate to conflate the BIA's two requirements in non-fraud scenarios so that one (a culpable mental state) automatically

---

[8] The Sixth Circuit committed a similar mistake when it deemed a violation of a Mississippi law prohibiting the fraudulent use of a Social Security number with the intent to deceive to be a CIMT, though that statute lacked the same "any purpose" language found in § 408(a)(7)(B). *See Serrato-Soto v. Holder*, 570 F.3d 686, 691 (6th Cir. 2009).

satisfies the other (moral reprehensibility). Our cases have for the most part treated mental state and reprehensibility as separate concepts, though recognizing that one can inform the other. *See, e.g., Smith*, 983 F.3d at 1211 ("The question before us is whether the level of intent needed to commit the crime of vehicular homicide in Florida is 'sufficiently base, vile, or depraved' to constitute a crime involving moral turpitude."). Moreover, an agency is generally required to "follow its own procedure" when the "rights of individuals are affected." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 9, 1981) (binding under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)). In fact, we have found that "[t]he BIA can . . . abuse its discretion by not following its own precedents without providing a reasoned explanation for doing so." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). Here, the BIA erred by collapsing the two requirements of moral turpitude into one.

Fourth, our earliest immigration cases did not use mens rea as an independent and sufficient basis for a finding of moral turpitude, and instead separately analyzed whether the statute of conviction was for an offense that was "inherently base, vile, or depraved, [and] contrary to accepted rules of morality." *See Skrmetta*, 22 F.2d at 120–21 (holding that making or possessing wine for one's own use was not a CIMT). In fact, we ruled that illegal re-entry after deportation and failure to register for the draft—offenses which involved some deception and deliberate and intentional conduct against the United States—were not CIMTs.

*See Rodriguez v. Campbell*, 8 F.2d 983, 984 (5th Cir. 1925) ("The appellant did not, within the meaning of the statute, commit a crime involving moral turpitude by re-entering or attempting to re-enter the United States from Mexico after she had been deported, and without having been duly admitted and inspected."); *Pollard v. United States*, 261 F. 336, 337–38 (5th Cir. 1919) (holding in a criminal case that violation of the Selective Service Act "was not [an offense] involving moral turpitude").

Language in some of our more recent cases may be read to suggest that a culpable mental state in a crime involving dishonesty is *always* enough to constitute moral turpitude regardless of moral reprehensibility. *See, e.g., Walker*, 783 F.3d at 1229 ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude."); *Itani*, 298 F.3d at 1215 (same). But such broad language is cabined by the word "generally," which does not mean "always" but rather "as a rule" or "usually." *See* The American Heritage Dictionary of the English Language 732 (4th ed. 2009). Moreover, the cases with such language involved offenses with fraud as an element or ingredient. *Walker* concerned the uttering of a forged instrument (requiring the intent to injure or defraud another to obtain a monetary benefit), and *Itani* concerned the misprision of a felony (requiring knowledge of a crime and an active role in concealment for the benefit of another). *See* Linnartz, *Lies*, 11 Charleston L. Rev. at 691 ("A genuinely evil motivation, such as the intent to defraud or to pervert the course of justice, seems to capture the idea of 'moral turpitude,' without

punishing those whose intentions are benign or whose falsehoods [are] relatively harmless."). Finally, such language—if taken literally to mean that non-fraudulent deceit always involves moral turpitude—would be inconsistent with the BIA's decisions in *Matter of B—M—*, *Matter of B—*, *Matter of Espinosa*, and *Matter of Marchena*, as well as with our earliest cases addressing moral turpitude. And where there is an intra-circuit conflict, we follow our earliest precedents. *See Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998).

Our holding today does not foreclose the possibility that a conviction for a violation of § 408(a)(7)(B) may be a CIMT. But if the BIA is going to hold that it is, it will need to do what it has so far failed to do in Mr. Zarate's case—it will have to apply its two-pronged moral turpitude standard in toto and decide whether the statute, under the categorical approach, involves conduct that is "reprehensible," i.e., conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Silva-Trevino*, 26 I. & N. Dec. at 833–34 (internal quotation marks omitted). *See also* Simon-Kerr, *Moral Turpitude*, 2012 Utah L. Rev. at 1007–08 (criticizing courts for "ignor[ing] community moral sentiments when applying the [moral turpitude] standard").

We remand to the BIA for that purpose.

## IV

We grant Mr. Zarate's petition, vacate the BIA's decision, and remand for further proceedings.

PETITION GRANTED.

20-11654              TJOFLAT, J., Concurring              1

TJOFLAT, Circuit Judge, Concurring:

I agree with the Court's reasoning. I write separately to highlight why and how 42 U.S.C. § 408(a)(7)(B) is analyzed under the categorical approach. The case law in this Circuit and the Supreme Court's jurisprudence on how to analyze statutes under the categorical approach have left me scratching my head at times. To help future litigants avoid that fate, I provide a brief analysis of the categorical approach and its application in the immigration context. I begin with the background on how we analyze statutes to determine whether they include crimes involving moral turpitude. Next, I lay out the structure of the statute at issue in this case and determine that it is an indivisible statute. And, finally, I explain why remand is appropriate in this case.

## I.

When the Department of Homeland Security charges an individual as being removable under the Immigration and Nationality Act, that individual may seek cancellation of removal under 8 U.S.C. § 1229b. In order to be eligible for cancellation of removal as a nonpermanent resident, an individual has the burden of proving four things: 1) continuous presence in the United States for at least ten years preceding the application, 2) good moral character, 3) no prior convictions, for among other things, crimes involving moral turpitude, and 4) exceptional and extremely unusual hardship to a qualifying relative if applicant is removed. *See* 8 U.S.C. § 1229b(b). At issue in this case is the third category, and the

question is whether a violation of 42 U.S.C. § 408(a)(7)(B), misuse of a social security number, is a crime involving moral turpitude.

As Judge Jordan has so ably explained, a crime involving moral turpitude falls into one of two buckets. That crime is either inherently base, vile, or depraved, or that crime is one involving fraud. *See Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002). Judge Jordan's opinion highlights that fraud is more than just dishonesty. Common-law fraud means that an individual is being dishonest for the further purpose of gaining something of value or causing a detriment to someone else. *See Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S. Ct. 511, 512 (1924). And such purpose must be an element of the statute at issue in order for a crime to involve moral turpitude on fraud grounds. *See Itani*, 298 F.3d at 1215–16.

To determine whether a statute involves moral turpitude, we apply the categorical approach.[1] This means that we look at the elements of the crime of conviction, not the facts of the case, to determine whether the least egregious conduct under the statute

---

[1] The categorical approach comes up in two contexts—prior convictions under the Armed Career Criminal Act ("ACCA") and moral turpitude in the immigration context. The Supreme Court has often used the same terminology and logic in both contexts and applies the ACCA framework to the immigration context. *See generally Pereida v. Wilkinson*, 141 S. Ct. 754 (2021); *Mathis v. United States*, 579 U.S. 500, 136 S. Ct. 2243 (2016); *Nijhawan v. Holder*, 557 U.S. 29, 129 S. Ct. 2294 (2009). For ease of explanation, I have not differentiated between the two contexts in the following discussion.

necessarily involves fraud or is inherently base, vile, or depraved. Typically, this is a straightforward exercise. Where only one crime with one set of elements is included in the statute, that is, when the statute is indivisible, we look at the essential elements of the crime. If the lowest level conduct included in the statute is morally turpitudinous, then we have a crime involving moral turpitude. If the lowest level conduct included in the statute is not morally turpitudinous, then we do not have a crime involving moral turpitude.

I will give an example. Suppose that common-law arson is a crime involving moral turpitude.[2] And let us say that an individual seeking cancellation of removal has previously been convicted of a state statute for arson that contained only the essential elements of arson: the willful and malicious burning of a dwelling house of another. Wharton's *Criminal Law* § 345 (C. Torcia 14th ed. 1980). We can easily line up that state statute with our previous determination that common-law arson is a crime involving moral turpitude to find that the individual in the example committed a crime involving moral turpitude without us ever looking at what the individual did. We don't know if he burned the Jones' house or the Smiths' house or whether he used fireworks or a match to

---

[2] For ease of discussion, let us assume that only common-law arson (and in my later example, only common-law burglary) and not other variations of arson (or burglary) count as crimes involving moral turpitude. I transposed these examples from the ACCA context. Later, it will become apparent that this stipulation is necessary to avoid an inquiry into the inherent baseness, vileness, or depravity of each state statute throughout this discussion.

start the fire. But he was convicted under the state arson statute, which is an indivisible statute that has one set of elements and defines one crime. The least culpable conduct under the statute is still common-law arson and is therefore morally turpitudinous. So, the individual seeking cancellation of removal is pretermitted from doing so because he has been convicted of a crime involving moral turpitude. That is how indivisible statutes work under the categorical approach.

But what about when the statute of conviction is divisible, meaning that some of the conduct encompassed in the statute is morally turpitudinous while other conduct encompassed in the statute is not? When working with divisible statutes, we must be careful to differentiate between divisibility with respect to alternative means of committing a crime listed in a statute and divisibility with respect to alternative elements listed in a statute. When alternative means are listed, we still use the categorical approach, just like we did above. But, when alternative elements are listed, we use the modified categorical approach. In explaining how the modified categorical approach works, I want to lay out the difference between alternative elements and alternative means and why different approaches are used between the two for determining whether the conduct at issue is morally turpitudinous.

An element is something the prosecution has to prove in order to sustain a conviction. A means is a way in which that crime can be committed, and it is not legally significant. So, back to our arson example. Arson is still a crime involving moral turpitude.

But now, let us say that the state statute for arson does not include only the traditional elements of arson. It now reads that arson is the willful and malicious *or reckless* burning of a dwelling house of another *by using flint, a match, explosives, friction, or any other method*. And let us say the state's supreme court has told us that the prosecution has to prove which mental state the defendant possessed to get a conviction. Now, we have two different crimes because of the two different mental states encompassed in the statute—one crime that is common-law arson and one that is not. The prosecution must prove mental state, so the dichotomy between "willful and malicious" and "reckless" is a dichotomy of elements. But the enumeration of methods that could be used is a list of alternative means.

In other words, the prosecution would not have to prove that an arsonist used steel wool instead of flint to commit arson under that state statute. As long as the prosecution can prove that the individual willfully or recklessly burned somebody else's house, the prosecutor has got a conviction, and the prosecutor will not have any more of a case if he can show that the defendant used steel wool instead of the flint. That's the essential difference between an element and a means: elements dictate what prosecutors must prove; means do not. And the core of the categorical and modified categorical approach is that we want to figure out what the defendant was actually convicted of—what the prosecutor had to prove to gain a conviction. The modified categorical approach is simply a method of figuring that out. *See Johnson v. United*

*States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 1273 (2010) (explaining that the modified categorical approach "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record").

With that background, I now turn to the application of the modified categorical method. So, in the state statute where arson can be committed willfully or recklessly, we have a divisible statute *with alternative elements*, and so we must use the modified categorical approach. Here, we use a limited set of documents, often called the *Shepard* documents,[3] in the record to determine whether the defendant's conduct was prosecuted as reckless or instead as willful. If the documents reveal that the conduct of which the defendant was convicted was reckless, the defendant will not have been convicted of a crime involving moral turpitude. If, however, the defendant was convicted of willfully burning someone else's house, he will have committed common-law arson, which we have determined is a crime involving moral turpitude. That is the modified categorical approach.

We do not use that same approach, however, for determining which of the alternative means of starting the fire was used. That is because to do so would tell us nothing about whether the defendant had committed a morally turpitudinous act. Arson does

---

[3] These include the indictment, jury instructions, plea agreement and colloquy, or other judicial record. *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005).

20-11654                TJOFLAT, J., Concurring                    7

not require a specific method. So, determining from the charging documents which method was actually used would not move the ball forward in determining whether the conviction was for a crime involving moral turpitude. We would use the categorical approach as it applied to the means of commission, meaning that we would look solely at the text of the statute itself to determine whether the least culpable conduct would be morally turpitudinous, without reference to the defendant's actual conduct.

## II.

Now, it gets more tricky when the line between means and elements is fuzzy. *See Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1055 (11th Cir. 2021) ("[I]t may sometimes be said that one man's means is another man's elements."). Let me give another example. Suppose that common-law burglary (and only common-law burglary) is a crime involving moral turpitude. Common-law burglary is the "unlawful breaking and entering [of] a dwelling at night with the intent to commit a felony." *Quarles v. United States*, 139 S. Ct. 1872, 1876 (2019) (citing 4 W. Blackstone, Commentaries on the Laws of England 224 (1769)). Now suppose a state statute defined burglary as the unlawful breaking and entering into any building, structure, or land, water, or air vehicle at night with the intent to commit a felony.[4] The state statute is broader than common-law burglary. The question is whether the statutory alternatives are

---

[4] My hypothetical statute is similar to the one at issue in *Mathis*, 136 S. Ct. at 2246.

elements or means.  In other words, do we have five different crimes, depending on the structure broken into, or do we have one crime with one locational element that can be committed in five different ways?

If it is five different crimes, we apply the modified categorical approach.  If it is one crime with five different means, we apply the categorical approach.  Under the modified categorical approach, some types of burglary covered under the state statute would match with common-law burglary and thus be crimes involving moral turpitude, while others would not.  So, violating the statute would sometimes be a crime involving moral turpitude, and sometimes it would not.  Under the categorical approach, the least culpable conduct under the statute would be less than common-law burglary—for instance, breaking into a car rather than a structure. And that means violating the state statute would never be a crime involving moral turpitude.  So, you see, that is why it matters whether we apply the categorical or the modified categorical approach to a statute.  Applying the categorical approach will on the whole lead to fewer findings of individuals having committed crimes involving moral turpitude.

In the case of the broader state burglary statute, the Supreme Court, over a bitter dissent, said that the different ways of breaking in were means rather than elements because the state supreme court had defined the listed items as different methods rather than different elements. *See Mathis v. United States*, 136 S. Ct. at 2250.  The Court gave us a few rules of thumb to use to

determine whether statutory alternatives are means or elements: 1) see how the state supreme court has defined the elements; 2) see if different statutory alternatives carry different penalties because different penalties means the listed items are different elements; 3) look at the statute itself to see if the statute identifies what a prosecutor must charge as elements; and 4) when all else fails, look at the record of conviction solely to see whether the listed items are elements. *See id.* at 2256. Although *Mathis* was dealing with a state burglary statute, we apply the same logic and rules of thumb to previous convictions under federal statutes, with the exception that under the first rule of thumb we now look to how the Supreme Court and our Circuit have defined the elements, instead of a state supreme court's interpretation. *Cf. Nijhawan v. Holder*, 557 U.S. 29, 129 S. Ct. 2294 (2009) (interpreting a federal statute for purposes of the categorical approach); *Itani*, 298 F.3d at 1216 (looking at how the federal courts had defined the statute to determine whether the felony was a crime of moral turpitude).

## III.

Now to the present case. The applicant in this case was previously convicted of 42 U.S.C. § 408(a)(7)(B).[5] The structure of the statute is as follows:

---

[5] As the Board of Immigration Appeals ("BIA") explained, the statute is clearly divisible as to the three subsections of subsection (7): (7)(A), (7)(B), and (7)(C). The more difficult question, explored in this section, is whether subsection (7) itself is divisible.

**(a)**IN GENERAL

Whoever—

**(7)** for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose—

**(B)** with intent to deceive, falsely represents a number to be the social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the social security account number assigned by the Commissioner of Social Security to him or to such other person.

42 U.S.C. § 408(a)(7)(B). At first glance, we see a list of statutory alternatives in subsection (7) starting with the phrase "for the purpose of." *Id.* § 408(a)(7). The question is, are these statutory alternatives elements or means? If the statutory alternatives are elements, then, by my count, we have at least five different crimes, and therefore we must use the modified categorical approach. If

20-11654            TJOFLAT, J., Concurring            11

the statutory alternatives are means, then we have one crime with five different methods of commission, and we must use the categorical approach.

The method we use is important because of how we have defined crimes involving moral turpitude. As Judge Jordan rightly explains and clarifies, crimes involving moral turpitude are either fraud offenses or crimes that are inherently base, vile, or depraved. And, as Judge Jordan again rightly explains, the wrinkle in this statute is the "for any other purpose" language at the end of subsection (7), which suggests that somebody could violate the statute without obtaining a benefit and therefore without committing fraud in the traditional sense.[6] So, if we determine the statute is divisible and we use the modified categorical approach, we figure out which of the purposes the individual used the false social security number for, and then we determine whether that specific offense is a crime involving moral turpitude. If, however, we decide that the statute is indivisible and we apply the categorical approach, then a

---

[6] For example, in *United States v. Perez-Campos*, 329 F.3d 1214, 1215 (10th Cir. 2003), a defendant was convicted of violating 42 U.S.C. § 408(a)(7)(B) when he gave a social security number not belonging to him to the jail clerk who booked him at Oklahoma County Jail. 329 F.3d at 1215. In that case, the defendant was probably misusing someone else's social security card "for any other purpose" under § 408(a)(7)(B), and, regardless of which purpose he used the false number to accomplish under the statute, giving a false social security number to a jail clerk who asks for a social security number is certainly not traditional fraud.

12                          TJOFLAT, J., Concurring                          20-11654

violation of 42 U.S.C. § 408(a)(7)(B) will never be a crime involving moral turpitude on fraud grounds.[7]

The parties and the Court's opinion have assumed that the categorical approach applies. I think they are right based on our precedent, but I want to explain why. If we were trying to determine whether the statutory alternatives were elements or means on our own in this case, I think it would be a head scratcher. At least to me, it seems like each of the statutory alternatives in subsection (7), some of which may be fraudulent and some of which may not be, could be a separate crime that the prosecution would have to prove, thereby making the modified categorical approach the appropriate method. But we do not have to reinvent the wheel here because we can look to the rules of thumb Justice Kagan gave us in *Mathis*. As I explained above, to determine whether statutory alternatives are elements or means, our first mode of attack is to look at how either the state supreme court (for state statutes) or the Supreme Court and our Circuit (for federal statutes) have interpreted the statute at hand. And here that is pretty simple. In *United States v. Harris*, we explained that the elements of a violation of § 408(a)(7)(B) are "(1) false representation of a Social Security number, (2) with intent to deceive, (3) for any purpose." 376 F.3d 1282, 1291 (11th Cir. 2004). Because we treat purpose as one overarching element and the enumerated list in subsection (7) as

---

[7] I discuss the "inherently base, vile, or depraved" ground for crimes involving moral turpitude below.

20-11654                TJOFLAT, J., Concurring                13

different ways of meeting the purpose requirement, the statutory alternatives are means and not elements. So, we apply the categorical approach.

Under the categorical approach, we look at the least culpable conduct under the statute to determine whether the conduct meets the standard for a crime involving moral turpitude. For the reasons explained above, using a false social security number "for any other purpose" does not meet the standard for fraud. So, we know that conviction under the statute is not for a crime involving moral turpitude on fraud grounds. Remand to the BIA is appropriate so that the BIA can determine whether, in the first instance, § 408(a)(7)(B) describes conduct that is inherently base, vile, or depraved and is thus morally turpitudinous on that ground. Although we have jurisdiction to review the legal question of whether a crime involves moral turpitude *de novo*, I think remand is appropriate in this case to promote the development of BIA case law in this area. *See Matter of Juan Pablo Aguilar-Mendez*, 28 I. & N. Dec. 262, 266 (BIA 2021) (quoting the Immigration Reform and Control Act of 1986 and explaining that the BIA's "case-by-case determinations [of morally turpitudinous conduct] promote the consistent application of the immigration laws nationwide"); *see also* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384 (explaining that "the immigration laws of the United States should be enforced . . . uniformly").

14                    TJOFLAT, J., Concurring                    20-11654

Because the contours of moral turpitude are hazy at best, remand is appropriate for the BIA to map § 408(a)(7)(B) onto the "inherently base, vile, or depraved" framework.